McCLENDON, J.
|2Two defendants, A. Ponder Jones and Beverly Bonneval (individual defendants), appealed a judgment in favor of the plaintiff, Denham Springs Economic Development District (the District), holding that the individual defendants’ challenge to a resolution proposing a bond issuance, and related proceedings, was untimely. We reverse in part, and affirm the remainder of the judgment.
PROCEDURAL AND FACTUAL BACKGROUND
The District, which comprises seventy-five (75) acres’of vacant property, is contained within the City of Denham Springs in Livingston Parish. It was created as a *330 political subdivision of the state in 2003, pursuant to LSA-R.S. 33:9038.2 to facilitate economic growth in the area. The Bass Pro Project (the Project) envisions the creation of a twenty-seven acre retail outlet, including a restaurant, related infrastructures and public improvements, and a Bass Pro Shops retail store. The Project is to be funded through the issuance of revenue bonds secured by the pledge of local government sales tax increments, in accordance with LSA-R.S. 33:9038.1 et seq. After payment of the revenue bonds in full, Bass Pro Shops would have the option of purchasing the retail store for a nominal fee. See Denham Springs Economic Development District v. All Taxpayers, 04-1674, p. 1 (La.2/4/05), 894 So.2d 325, 327.
The legal proceeding at issue in this case springs from a bond resolution (the Bond Resolution) adopted by the District on March 8, 2005, and published on March 13, 2005. On May 26, 2005, the District filed a motion for judgment, naming as defendants, “all taxpayers, property owners and citizens of the Denham Springs Economic Development District, and nonresidents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of not to exceed $50,000,000.00 Denham Springs Economic Development District Sales Tax Increment Bonds (Bass Pro Shops Project) in one or more series, the means provided for the payment and security thereof and related matters.” See LSA-R.S. 13:5123. In the motion for judgment, the District sought judicial validation of the bonds and the means of securing and paying them, as described in the Bond Resolution. After the filing, the court ordered the publication of the motion for | ¿judgment and the accompanying court order as required by LSA-R.S. 13:5124. A hearing was scheduled for June 17, 2005.
On June 1, 2005, the individual defendants filed an answer and a peremptory exception raising the objection of no cause of action. On June 10, 2005, the trial court ordered the second publication of the motion for judgment, with a copy of the order. Another hearing was scheduled for June 28, 2005. On June 17, 2005, the individual defendants requested a continuance to allow time for a deposition of a non-party to the suit, Bass Pro, and filed a separate motion for an expedited hearing on the motion for a continuance. The trial court ordered that the motion be heard by telephone conference on June 22, 2005. After the hearing, the trial court denied the motion to continue.
On June 24, 2005, the District filed a “Motion To Strike All Challenges To Bonds & For Entry of Final Judgment,” and attached a certificate of service attesting that counsel of record were sent a copy on the same date, by fax or hand delivery. The motion to strike essentially claimed that the thirty-day time limit, provided in LSA-Const. art. VI, § 35(B) and LSA-R.S. 33:9038.4 L for a challenge to the validity of a bond resolutions and related proceedings, was a peremptive period that had already run before the individual defendants filed their answer. Thus, the individual defendants’ right to challenge was extinguished. Based on the alleged loss of the right to challenge, the District asserted that the court must enter a final judgment recognizing the validity of the Bond Resolution and of all proceedings relating to the bonds, their issuance, security, payment, and authorization.
At the June 28, 2005 hearing, the individual defendants initially objected to hearing the motion to strike and for final entry of judgment, based on lack of formal service of the motion and notice of a requisite show cause hearing. In response, the District noted that the trial was noticed for *331 that day, and argued that the motion based on untimeliness could “be made orally at trial,” and therefore did not require any additional notice. Finding that the motion could dispose of the case, the trial court decided that it would hear the motion to strike.
At that hearing, on the issue of peremption, the individual defendants acknowledged that they were not challenging the District’s right to pledge its own |4money to the Project or to issue bonds secured by the District’s money. Rather, the challenge was to the ability of other taxing entities to agree to cooperate in the project and pledge their tax monies to secure the bonds. Further, the individual defendants asserted that the time limit for challenging the Bond Resolution was not applicable to a tax election that had not been held, or to a cooperative endeavor agreement that was not yet finalized, at the time that the thirty-day time limit had run. They also argued that the thirty-day time limitation on challenges to bond resolutions did not apply to their challenge, which was based on the constitutionality of Chapter 27 of Title 33 of the Louisiana Revised Statutes, entitled “Cooperative Economic Development Law.”
Finding that the individual defendants failed to challenge the Bond Resolution and all related matters contained in the Bond Resolution within the time limit allowed by the constitution and statutory law, the trial court granted the motion to strike the challenges. By a final judgment dated July 12, 2005, the trial court conclusively recognized the validity of the “Bonds, the validity of the tax, any lease or other means provided for the payment of such Bonds and the validity of all pledges of revenues and of all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of such Bonds .... ”
The Individual defendants appealed. They assigned the following errors:
1. The trial court erred in hearing and granting a contradictory motion that had not been set for hearing by rule and that had not been served on Appellants.
2. The trial court erred in allowing the District to use the “notice by publication” provisions of a statute to avoid actual service on known opposition, to avoid any attempt to provide actual notice to known, easily identifiable interested parties, and to prevent the public from having a fair opportunity to challenge a Cooperative Endeavor Agreement.
3. The trial court erred in using a District resolution to perempt any and all challenges to (1) actions by other public bodies that were not yet defined and had not yet taken place at the time the per-emptive period had run out; (2) a cooperative endeavor agreement that had not yet been written and did not exist at the time that the peremptive period had run out; and (3) elections that had not taken place at the time the peremptive period had run out.
4. The trial court erred in validating two voter propositions that are clearly unconstitutional on their face.
5. The trial court erred in validating and precluding all challenges to a cooperative endeavor agreement that (1) upon information and belief, will be written in a way that violates the Louisiana Constitution, LSA-Const. art. VII, § |S14(A); and (2) was never introduced into evidence or even reviewed by the trial court.
GENERAL PROCEDURE FOR BOND ISSUANCE, AND VALIDATION OF BOND ISSUANCE AND COOPERATIVE ENDEAVOR AGREEMENTS
To facilitate economic development, a governmental subdivision may establish an *332 economic development corporation or an economic development district, and issue bonds. LSA-R.S. 33:9038.1, et seq. Also in furtherance of economic development, governmental entities, including the state, are allowed to enter into cooperative endeavor agreements with each other and public or private associations or corporations. LSA-R.S. 33:9021(6); 33:9029.1; 33:9029.2; 33:9031; 33:9038.5. “Cooperative endeavors” may include cooperative financing, cooperative development, or “any other form of cooperative economic development activity.” LSA-R.S. 33:9022(1). To validate cooperative endeavor agreements, a suit may be filed “as though such agreements constituted the issuance of bonds of a governmental unit.” LSA-R.S. 33:9031.1.
If not previously dedicated to another purpose, tax increment financing may provide the payment or security for the project or bonds issued. See LSA-R.S. 33:9023; 33:9032-33; 33:9038.3-4. As in this case, an established economic development district may specifically pledge or dedicate “sales tax increments” as a guaranty of any shortfall in the payment of the bonds or to finance all or part of the project. LSA-R.S. 33:9038.4 A(l).
A “resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein.” LSA-Const. art. VI, § 35(B); see LSA-R.S. 33:9038.3 A; 33:9038.4 A(3). “For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds.” Id. A similar thirty-day time limit is provided in LSA-R.S. 33:9038.3 L and 33:9038.4 L. The statutory provisions state, in part, as follows:
After the expiration of such period, no person may contest the regularity, formality, legality, or effectiveness of the ordinance or resolution, any provisions of the bonds to be issued pursuant thereto, the provisions for | fithe security and payment of the bonds, and the validity of all other provisions and proceedings relating to their authorization and issuance, for any cause whatever.
However, we note that “an election held to incur or assume debt, issue bonds, or levy a tax,” is subject to a different time limit. LSA-Const. art. VI, § 35(A). More specifically, LSA-Const. art. VI, § 35(A) provides as follows: “For sixty days after promulgation of the result of an election ..., any person in interest may contest the legality of the election, the bond issue provided for, or the tax authorized, for any cause.”
All of these time limitations, whether constitutional or statutory, provide peremptory language. If a challenge is not timely made, the issues raised in the resolution or the tax election “shall be conclusively presumed to be valid, and no court shall have authority to inquire into” the covered matters. LSA-Const. art. VI, § 35(A) & (B); LSA-R.S. 33:9038.3 L & 33:9038.4 L. Proceedings to determine the validity of the issuance of governmental bonds are governed by a special set of statutes, LSA-R.S. 13:5121, et seq. Pursuant to LSA-R.S. 13:5123, “[t]he governing body of any governmental unit proposing to issue ... bonds ... may bring at any time a proceeding ... to establish the validity of such bonds, the legality of the election, if any, authorizing the issuance of such bonds, ... and the validity of all pledges of revenues ....”. Further, the motion for entry of judgment to establish the validity of a bond issuance, and related *333 proceedings, is not a generic contradictory-motion, but rather is governed by its own statute, LSA-R.S. 13:5124, which provides:
Service by publication of motion for judgment; parties defendant; notification
A. (1) All such parties shall be served by publishing the motion for judgment in a newspaper published in or having general circulation in such governmental unit in the manner hereinafter set forth. Upon the filing of the motion for judgment, the court shall enter an order requiring the publication of the motion two times within a period of fifteen consecutive calendar days from the date of the issuance of the order, specifying the dates for publication thereof with the first publication as hereinabove provided to be not later than eight days from and after the date of the issuance of the order, and at the same time fix a time and place for hearing the proceeding, which time and place shall be published with the motion for judgment. The date fixed for the hearing shall be at least ten days, but not more than thirteen days, after the second publication of such motion for judgment.
17(2) By publication of such motion for judgment, all taxpayers, property owners, and citizens of such governmental unit including nonresidents owning property or subject to taxation therein, and all other persons having or claiming any right, title, or interest in any property or funds to be affected in any way by the issuance of such bonds, or having or claiming to have any right or interest in the subject matter of such motion for judgment, shall be considered as' parties defendant in such proceedings and as having been duly served, and the court shall have jurisdiction of them the same as if each of them were named individually as a party defendant in such motion for judgment and personally served with process.
B. The party filing a motion for judgment shall also cause notification of said filing to be made upon the State Bond Commission and the attorney general by mailing a certified copy of the motion for judgment by registered or certified mail, with return receipt requested. No judgment can be rendered until the party filing a motion for judgment files in the record an affidavit of the individual who mailed the motion for judgment to the State Bond .Commission and attorney general, showing that it was properly addressed, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt thereon.
The clear goal of these statutes governing affirmation of the validity of a bond issuance is to provide stability in the marketing of governmental bonds. See LSA-R.S. 13:5122. In furtherance of this goal of stability, LSA-R.S. 13:5130 provides that: “No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded.”
ASSIGNMENTS OF ERROR 1 AND 2 NOTICE AND FAIR HEARING
The individual defendants assign error to the service of the Bond Resolution by publication. See LSA-Const. art. VI, § 35(B); LSA-R.S. 33:9038.3 A & 33:9038.4 A(3). They assert that the District knew of their Interest and was required to serve them individually with the resolution. As legal authority for their position, they cite World Trade Center Taxing District v. All Taxpayers, 04-1365 (La.App. 4 Cir. 9/1/04), 883 So.2d 459, writ denied, 04-2282 (La.10/29/04), 885 So.2d *334 599, and Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
Without addressing the reasoning of the fourth circuit, we simply note that the case is distinguishable. Although the fourth circuit in World Trade Center Taxing District recognized that intervenors in the suit had a right to notice of a hearing on the motion for judgment, the fourth circuit did not fully explain its analysis or underlying 1 sfacts, and did not address or rule on the service by publication of a bond resolution. See World Trade Center Taxing District, 04-1365 at pp. 6-7, 883 So.2d 462.
In our case, the record contains no evidence that the identity, addresses, or alleged interests of the individual defendants were known to the District, nor does the record evidence any agreement to send notice beyond publication. On February 14, 2005, an attorney, Cheryl Kornick, sent a letter to the District’s attorney, requesting actual service of any “legal proceeding” concerning the Project. However, the letter made no reference to specific clients who qualified as parties with an interest sufficient to require notice beyond that chosen by the legislature. Certainly, the individual defendants were not named in the letter.[1] As to the court proceedings, the individual defendants answered the District’s motion for judgment within 6 days, and notice of a hearing on the merits of that motion was provided to them. Similarly, for lack of specificity of identity and a corresponding recognizable substantive liberty or property interest, we see no error based on the tenets of Mullane. For these reasons, we find no violation of due process rights to fair notice and hearing.
At trial the individual defendants admitted receipt of the motion to strike, but argued that they should have received earlier service of said motion. The individual defendants also argue that the motion was the equivalent of a summary proceeding, which is governed by a procedural article requiring service and a hearing. See LSA-C.C.P. art. 2591, et seq. However, the individual defendants concede that the trial court ruled not on the merits, but on the issue of peremption raised by the motion to strike. Thus, the motion to strike was more akin to a peremptory exception raising the objection of no cause of action or of prescription. See Saia v. Asher, 01-1038, p. 4 n.5 (La.App. 1 Cir. 7/10/02), 825 So.2d 1257, 1259 n. 5. Essentially, a hearing on the claim of peremption was held, and the trial court'ruled that the challenge by the individual defendants was not timely under LSA-R.S. 33:9038.4 L.
| n“The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision ....” LSA-C.C.P. art. 928 B. The exception may be “disposed of either in advance of or on the trial of the case.” LSA-C.C.P. art. 929 B; see also LSA-R.S. 13:5126 (invests the trial court with much discretion to “make such orders as to the proceedings and such adjournments as will enable him properly to try and determine the same ... with the least possible delay.”). No evidence may be admitted on an exception of no cause of action. LSA-C.C.P. art. 931. Prior to final judgment, peremption may be noticed by the court on its own motion. LSA-C.C. art. 3460.
*335 After a thorough review of the record, we again find no violation of due process rights. The trial court ruled that the challenge was perempted only after a hearing on the question of timeliness, where both parties argued the point.
ASSIGNMENT OF ERROR 3 COOPERATIVE ENDEAVOR AGREEMENT AND ELECTION CHALLENGES
The Individual defendants assign error to the premature application of the constitutional and statutory peremptive periods to what they label as yet undefined issues. They argue that this is particularly true for a cooperative agreement “that had not yet been written and did not exist” and for “elections that had not taken place at the time the peremptive period had run out.” For purposes of clarity, we will address each of these arguments separately.
Cooperative Endeavor Agreements
The published Bond Resolution provided the names of the governmental entities that were cooperating in the financing of the Project, the date each one passed a resolution to hold an election to re-dedicate a percentage of the sales tax it collected, and the percentage rate to be dedicated to the project. Specifically, on the issue of cooperative endeavor agreements, the proposition stated, as follows:
[T]he District desires to enter into a Cooperative Endeavor Agreement ... by and among the District, the City, the Parish, the Gravity Drainage District, the Law Enforcement District, the School Board and the School Board District, ...; the Denham Springs Economic Development Corporation ...; and the State of Louisiana, through the Department of Revenue and Taxation ..., to effect the collection and pledge of the sales tax increments to secure the payment of debt service on the Bonds. ..."
[inThe proposition also referenced a future mortgage agreement that would provide more detail and “be more particularly described within the above-referenced Mortgage Agreement, Cooperative Endeavor Agreement and related agreements necessary to effect the purposes .... ”
In analyzing the argument before us, we note that the statutes do not require a cooperative endeavor agreement to be in final form when referenced in a Bond Resolution. Even under the most stringent statute, which governs cooperative endeavor agreements involving the state, the agreement is required only to “set forth in reasonable detail the obligations of the various parties thereto.” LSA-R.S. 33:9029.2 A(3). Considering the information provided by the District in light of the legislative mandate to afford an expeditious procedure and to invalidate only on the grounds of “substantial” or “material” defects, we find that the Bond Resolution described a cooperative endeavor agreement and financing plan, as accepted by the various taxing entities, sufficient to put the taxpayers on notice. LSA-R.S. 13:5122 & 13:5130; see generally Council of City of New Orleans v. All Taxpayers, 03-0189, pp. 4-5 (La.App. 4 Cir. 2/24/03), 841 So.2d 72, 75-76.
On the issue of whether the per-emptive period of LSA-R.S. 33:9038.4 L applies to cooperative .endeavor agreements, LSA-R.S. 33:9031.1 provides that Part XVI of Chapter 32 of Title 13 is applicable to suits to validate cooperative endeavor agreements, and those suits may be filed “as though such agreements constituted the issuance of bonds of a governmental unit.” We also note that the statutes applicable to bond and cooperative endeavor agreement validation, including LSA-R.S. 33:9038.4 L, are all contained in Title 33, Chapter 27, entitled “Cooperative Economic Development Law.” Finally, we *336 must consider the overall legislative intent to provide an “expeditious” procedure for bond issuance and related matters, in order to insure the stability of the bonds. After our thorough ■ review, we conclude that the court did not err in holding that, under the facts of this case, the peremp-tive period outlined in LSA-R.S. 33:9038.4 L applied to the cooperative endeavor agreements described in the Bond Resolution.
lnFor these reasons, a challenge to the financing plan and the cooperative endeav- or agreement among the various taxing entities should have been initiated within the thirty-day time limitation. Were this court to interpret the peremptive provisions otherwise, a future challenger could impermissibly delay and destabilize the issuance and marketing of governmental bonds, notwithstanding the inclusion of “reasonable detail” in the resolution. LSA-R.S. 33:9029.2 A(3).
Elections
Under the undisputed facts of this case, the Bond Resolution preceded the election that the individual defendants wished to contest. That election was held on April 23, 2005. Therefore, the individual defendants argue that a peremptive period could not begin to run until the election was held.
The applicable statutory time limitation, LSA-R.S. 33:9038.4 L, does not directly reference elections. However, LSA-Const. art. VI, § 35(A) and (B) do speak of elections. Specifically, Section 35(A) provides a sixty-day time limitation to contest tax elections related to the issuance of bonds. See also LSA-R.S. 18:1294 (Title 18 covers general bond, debt, and tax elections). Section 35(B) references elections only at the end of the paragraph, stating that: “it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with.” LSA-Const. art. VI, § 35(B) (emphasis added).
The use of the terms, “if any” and “were authorized,” in the past tense, suggests an interpretation that reconciles both paragraphs of Section 35. Reading the paragraphs together, paragraph B would be applicable to an unchallenged election held prior to the publication of the resolution. However, in this particular ease, with an election that occurred more than thirty days after the publication of the resolution, an interested party could not be expected to bring a viable challenge to the legality of that election until after the election had actually been held. Before the election occurs, an interested party would have no knowledge of fraud that may be perpetrated during an actual election. Thus, based on our reading of Section 35(A) and (B) in pari materia, a challenge to the legality of the relevant tax election held after the thirty-day peremptive | ^.period had run in this case was not foreclosed.[2] Therefore, to the extent that the trial court held that a challenge to the legality of the election or elections at issue was perempted, we reverse. Such a challenge would be timely if brought within sixty days after promulgation of the result of [the] election .... ” LSA-Const. art. VI, § 35(A).
ASSIGNMENTS OF ERROR 4 AND 5 CONSTITUTIONALITY CHALLENGES
The individual defendants challenge the constitutionality of the tax elections. However, any challenge directed to the *337 Bond Resolution and cooperative endeavor agreement was not made timely. Objections to the election would properly be the subject of a timely challenge to the election, and not part of this appeal.
Finally, we pretermit discussion on the assignment of error 5, which was based on the allegation that the District and other taxing authorities involved in the Project may write a constitutionally invalid cooperative endeavor agreement, some time in the future.[3] We have nothing in this record to review on that issue, and this court does not issue advisory opinions. Citgo Petroleum Co. v. Louisiana Public Service Commission, 04-0914, 04-0917, 04-1190, 041191, 04-1192, p. 12 (La.3/2/05), 898 So.2d 291, 298.
CONCLUSION
For these reasons, we reverse any holding by the trial court that a challenge to the legality of the election was perempted. The remainder of the judgment is affirmed. The costs of the appeal are assessed to the individual defendants, A. Ponder Jones and Beverly Bonneval.
REVERSED IN PART, AND AFFIRMED IN PART.
DOWNING, J., dissents and assigns reasons.
Welch, J., concurs in part, dissents in part, and assigns reasons.

. At oral arguments, counsel for the individual defendants asserted that counsel for the District agreed to send the requested notice, but did not. However, the alleged agreement was neither mentioned nor proffered during the June 28th hearing. Nor was said agreement or conversation referenced or confirmed in the letter introduced into evidence. In deciding this case, we are bound solely by the evidence contained in the record before us.

. We make no ruling as to the outcome of a case where the election was held while the thirty-day period was running. That is not the case before us on appeal.

. We also make no ruling on whether the validity of a future cooperative endeavor agreement might be challenged on the basis of being so vastly different from that which was noticed to the public.