970 So.2d 996 (2007)
A. Ponder JONES,
v.
LIVINGSTON PARISH LAW ENFORCEMENT DISTRICT
A. Ponder Jones,
v.
Livingston Parish School Board
Beverly Bonneval
v.
Livingston Parish Gravity Drainage District No. 1.
Nos. 2007 CA 0628, 2007 CA 0629, 2007 CA 0630.
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
Writ Denied October 31, 2007.
*997 Robert S. Angelico, Cheryl M. Kornick, K. Todd Wallace, Kelly B. Becker, Liskow *998 & Lewis, New Orleans, for Plaintiffs-Appellants A. Ponder Jones and Beverly Bonneval.
Eric L. Pittman, Denham Springs, for Defendant-Appellee Livingston Parish Law Enf. District.
Harry J. Phillips, Jr., Thomas R. Peak, Tracy A. Morganti, Taylor, Porter, Brooks & Phillips, Baton Rouge, for Defendant-Appellee Livingston Parish School Board.
D. Blayne Honeycutt, Wanda J. Edwards, Fayard & Honeycutt, Denham Springs, for Defendant-Appellee Livingston Parish Gravity Drainage District No. 1.
William L. Schuette, Fred L. Chevalier, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., Baton Rouge, for Intervenor-Appellee Denham Springs Economic Development District.
Before: PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
The plaintiffs appeal a judgment dismissing all of their remaining challenges to an election in which the voters of Livingston Parish had approved propositions whereby a portion of revenues derived from certain sales taxes levied and collected by the defendants would be re-dedicated to payment of municipal bonds issued to finance the development of a Bass Pro Shop retail outlet in Livingston Parish. The defendants filed a motion to dismiss the appeal on the basis that this court has no subject matter jurisdiction over this matter. After a review of the record and the latest decision from the Louisiana Supreme Court involving this continuing litigation, we grant the motion and dismiss this appeal.

FACTUAL AND PROCEDURAL BACKGROUND
On May 26, 2005, A. Ponder Jones, one of the plaintiffs in this matter, filed two lawsuits as a taxpayer of Livingston Parish and a resident of the district in which certain public entities levy and collect sales and use taxes; Beverly Bonneval filed a similar suit on the same day against a third public entity.[1] The defendants in these three cases (the Election Challenge Suits), the Livingston Parish Law Enforcement District (the Law Enforcement District), the Livingston Parish School Board (the School Board), and the Livingston Parish Gravity Drainage District No. 1 (the Drainage District), are all political subdivisions of the State of Louisiana with the authority to levy and collect sales and use taxes. The defendants had agreed to form a cooperative endeavor agreement with the Denham Springs Economic Development District (the Development District), whereby they would re-dedicate certain percentages of their sales and use tax revenues for a limited time for debt service on sales tax increment revenue bonds issued by the Development District to finance a Bass Pro Shop retail outlet in Livingston Parish.[2] A resolution describing the bonds, their security, the proposed cooperative endeavor agreement, and the method of payment of the bonds, and authorizing the issuance of the bonds (the Bond Resolution), was adopted by the Development District on March 8, 2005. This resolution was published in accordance *999 with applicable law on March 13, 2005. Each of the defendants submitted to the voters propositions authorizing the re-dedication of certain percentages of the sales and use taxes they collect for the purpose of debt service on the bonds used to finance the Bass Pro project.[3] All of these propositions were overwhelmingly approved in a parish-wide election held April 23, 2005. In accordance with that election, by ordinances approved by each taxing entity, the defendants promulgated the official results of the election authorizing the re-dedication of the taxes.[4]
The plaintiffs in these Election Challenge Suits sought a judgment setting aside those ordinances on the grounds that the terms of the propositions, the ordinances, and the taxes authorized therein were unconstitutional and/or in contravention of the statutes that enabled the defendants to levy and collect sales and use taxes. They further sought a declaratory judgment holding that the ordinances and the taxes authorized in them were unconstitutional and/or in contravention of the enabling legislation. The petitions pointed out that Article VI, § 30 of the Louisiana Constitution provides that political subdivisions "may exercise the power of taxation . . . under authority granted by the legislature for parish, municipal, and other local purposes, strictly public in their nature." (Emphasis added in the petitions). Specifically, the Law Enforcement District was authorized, pursuant to LSA-R.S. 33:2740.7, to levy a sales and use tax within the unincorporated areas of Livingston Parish, the proceeds of which were to be used "for operating and maintaining the parish prison and providing for the payment of other costs of law enforcement in the parish." The Drainage District was authorized, pursuant to LSA-R.S. 38:1805, to levy a sales and use tax, the proceeds of which were to "be used exclusively to acquire drainage works; rights of way for canals and ditches; flood prevention works; equipment and facilities necessary to construct, maintain and operate outlets for the waters of the district; and to prevent flooding." The plaintiffs argued that the re-dedications of the sales and use taxes approved by the voters in the elections and promulgated in the ordinances by these two political subdivisions were not for the purposes approved by the legislature in the enabling statutes, but were "to pay debt service on sales tax increment revenue bonds issued by or on *1000 behalf of the [Development District] to finance a Bass Pro retail outlet and related public improvements and infrastructure within the [Development District]. . . ." The plaintiffs argued that the elections were invalid because only the legislature could authorize the political subdivisions to exercise the power of taxation, and the public could not change the purposes for which the legislature had approved the taxes. They claimed the ordinances exceeded the authority granted by the legislature and violated Article VI, § 30 of the Louisiana Constitution.[5]
The plaintiffs further contended that the ordinances passed by all three public entities were in violation of Article VII, § 14(A) of the Louisiana Constitution, which restricts the manner in which local entities may use sales and use tax proceeds, stating, "[e]xcept as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." The plaintiffs' petitions pointed out that the supreme court had interpreted this provision as prohibiting local entities from loaning, pledging, or donating proceeds from taxes without a "pre-existing legal obligation" to do so, and also as prohibiting the use of tax revenues to pay the debts of another governmental entity. City of Port Allen v. Louisiana Mun. Risk Mgmt. Agency, 439 So.2d 399, 401 (La.1983). The plaintiffs contended that the re-dedications of sales and use tax proceeds approved in the elections and promulgated in the ordinances violated Article VII, § 14(A), because none of these local entities had a pre-existing legal obligation to use tax proceeds for debt service of another governmental entity's obligation.[6]
The plaintiffs invoked the provisions of LSA-R.S. 18:1401, et seq., the Louisiana Elections Code, and requested summary proceedings to set aside the ordinances and the results of the election. They also requested judgments declaring that the propositions, the ordinances, and the taxes authorized therein were unconstitutional and, as to the Law Enforcement District and the Drainage District, in violation of the enabling legislation. The defendants filed exceptions raising the objections of no cause of action under the Elections Code, prescription/peremption, and improper cumulation of actions. After a hearing, the court entered judgment granting the exceptions of no cause of action with respect to summary proceedings under the Elections Code; found that any claim to challenge the "call" of the elections was perempted pursuant to LSA-R.S. 18:1405(G);[7] and found that the plaintiffs *1001 had improperly cumulated summary Elections Code proceedings with an ordinary proceeding for a declaratory judgment. The judgment, which was signed on June 1, 2005, dismissed the plaintiffs' Elections Code proceedings and stayed the proceedings for declaratory judgment until resolution of another pending suit involving these same claims and parties.[8] The plaintiffs appealed, pursuant to LSA-R.S. 18:1409, and simultaneously filed notice of their intent to seek supervisory writs. This court reviewed the matter under its supervisory jurisdiction and found no error in the district court's judgment dismissing the claims brought under the Elections Code. Therefore, the writ was denied and the appeals were dismissed as moot. In a per curiam opinion explaining its decision on the writ, this court stated that "relators can pursue their constitutional and statutory challenges to the propositions and ordinances at issue pursuant to those portions of the suits seeking declaratory relief pending in the district court." Jones v. Livingston Parish Law Enf. Dist., 05-1200 (La.App. 1st Cir.6/9/05), 904 So.2d 93 (unpublished writ action).
In the meantime, after the Bond Resolution was adopted by the Development District on March 8, 2005, and published on March 13, 2005, thirty days elapsed without any challenge to it.[9] On May 26, 2005, the same day the Election Challenge Suits were filed, the Development District filed a "Motion for Judgment" (the Bond Validation Suit), seeking a judicial declaration that the bonds, their security, and their payment method, as described in the Bond Resolution, were valid. The plaintiffs in the Election Challenge Suits[10] opposed the Development District's motion and challenged the legality of the security and payment method of the bonds, the legality of the cooperative endeavor agreement among the taxing authorities, and the legality of the election approving the propositions described in the Bond Resolution. The Development District moved to strike these challenges on the grounds that the taxpayers' opposition was filed beyond the thirty-day peremptive period required by LSA-R.S. 33:9038.34(L)[11] and LSA-Const. art. VI, § 35(B), and the district court granted the motion to strike. On appeal, this court affirmed the judgment in part, but also ruled that because the publication of the Bond Resolution took place before the elections, the challenges to the elections were timely, because they were subject to the sixty-day period following promulgation of the election results, as set out in LSA-Const. art. VI, § 35(A), and were not barred by the thirty-day limitation commencing from publication of the Bond Resolution. This court concluded that "we reverse any holding by the trial court that a challenge to the legality of the election was perempted." Denham Springs Econ. Dev. Dist. v. All Taxpayers, 05-1684 (La. App. 1st Cir.8/25/05), 927 So.2d 328, 337. *1002 The supreme court granted the taxpayers' writ and, citing LSA-Const. art. VI, § 35(B), held that the failure to challenge the Bond Resolution within thirty days of its publication barred all challenges to the bonds, their security, and the means of payment. Denham Springs Econ. Dev. Dist. v. All Taxpayers, 05-2274 (La.10/17/06), 945 So.2d 665, 687-88 (Denham Springs II). Because the Development District had not sought a writ on this court's ruling that other timely-filed challenges to the legality of the elections were not barred by the thirty-day limitation, the supreme court pretermitted consideration of that issue. Denham Springs II, 945 So.2d at 673 n. 12.
After the supreme court had rendered its judgment in the Bond Validation Suit, the defendants in these Election Challenge Suits moved to have the stay lifted.[12] The motion to lift the stay was granted in November 2006, and the defendants then filed a peremptory exception, or alternatively, a motion for summary judgment, seeking dismissal of all the plaintiffs' claims in these consolidated matters on the basis of the supreme court's decision in Denham Springs II. After a hearing, the district court granted the exception/motion and dismissed all of the plaintiffs' remaining challenges. A judgment was signed on December 18, 2006, and this appeal followed.
In this appeal, the plaintiffs contend that this court's statement in its review of the Bond Validation Suit that the election challenges could proceed is still good law, since the supreme court did not rule on that issue in Denham Springs II, and for that reason, this court's decision on that issue is a final judgment. They also argue that this court's statement in its writ action in these Election Challenge Suits concerning the continued viability of the plaintiffs' challenges to the propositions and ordinances at issue is the "law of the case." Therefore, the plaintiffs contend the district court erred in ignoring those decisions and dismissing their challenges to the constitutionality and legality of the propositions, ordinances, and elections.
Relying on the supreme court's decision in Denham Springs II, the defendants oppose these arguments and have moved to dismiss the appeal on the basis that this court lacks subject matter jurisdiction. They argue that the true nature of the plaintiffs' claims in these suits is an attack on the pledges of certain tax increments that are to serve as security for the Bass Pro project bonds. They claim that the clear language of LSA-Const. art. VI, § 35(B) and LSA-R.S. 33:9038.34(L), as well as the supreme court's interpretation of those constitutional and statutory provisions in Denham Springs II, withdraws from all courts the authority to consider any challenge relating to the bonds, their security, the cooperative endeavor agreements, and the method of payment of the bonds. Thus, they contend, this court has no subject matter jurisdiction over this appeal.

DISCUSSION
The motion to dismiss this appeal raises the issue of whether this court may now consider the merits of the plaintiffs' constitutional challenges to the election and the ordinances promulgated by the defendants as a result of that election, based on this court's statements in its review of the Bond Validation Suit and in its writ action in this case, or whether those challenges were preempted, based *1003 on the supreme court's opinion in Denham Springs II. Since this issue is confined to legal matters and does not involve any factual disputes, this court's review is de novo. See Price v. Roy O. Martin Lumber Co., 04-0227 (La.App. 1st Cir.4/27/05), 915 So.2d 816, 824, writ denied, 05-1390 (La.1/27/06), 922 So.2d 543; Elliott v. Amato & Creely, 05-0376 (La.App. 1st Cir.3/29/06), 934 So.2d 779, 781. And, because the resolution of this issue may determine the outcome of this case, we will address the motion to dismiss first.
The defendants' motion to dismiss the appeal is based in part on Article VI, § 35(B) of the Louisiana Constitution, which states:
Contesting Ordinance or Resolution; Time Limit. Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days. (Emphasis added).
Louisiana Revised Statute 33:9038.34 (as re-designated), which was first enacted by the legislature in 2002, provides the statutory authority for local governmental subdivisions or entities to issue revenue bonds payable from revenues generated by economic development projects with a pledge and dedication of sales tax increments to finance all or part of such a project. With reference to the time limit for challenges to bond resolutions proposed and adopted under its authority, Subsection L states:
A copy of the ordinance, or resolution if the issuer does not act by ordinance, authorizing the issuance of bonds hereunder shall be published immediately after its adoption in one issue of the official journal of the district. For thirty days after the date of publication, any person in interest may contest the legality of such ordinance or resolution, any provision of the bonds, the provisions therein made for the security and payment of the bonds, and validity of all other provisions and proceedings relating to the authorization and issuance of the bonds. After the expiration of such period, no person may contest the regularity, formality, legality, or effectiveness of the ordinance or resolution, any provisions of the bonds to be issued pursuant thereto, the provisions for the security and payment of the bonds, and the validity of all other provisions and proceedings relating to their authorization and issuance, for any cause whatever. Thereafter, it shall be conclusively presumed that the bonds, the legal documents providing for the bonds, and all security for the bonds is legal and that every legal requirement for the issuance of the bonds has been complied with. No court shall have authority to inquire into any of these matters after the aforementioned publication period. (Emphasis added).
*1004 The record shows, and both sides agree, that the plaintiffs in these consolidated suits did not contest the legality of the Bond Resolution or any of its provisions until after the thirty-day period set out in the above constitutional article and statute.
The defendants aver that the plaintiffs' challenges in these consolidated cases are not "election challenges," directed against the election itself and the methods or procedures used in that election. Rather, they contend that the plaintiffs' claims address the substance of the underlying propositions, in particular, the re-dedication of certain tax revenues for a purpose not chosen by the legislature and not allowed under the constitution. As such, the defendants argue that the supreme court's decision in Denham Springs II forecloses the plaintiffs' claims, because the court there held that unless the challenges were filed within thirty days after publication of the bond resolution, no court has authority to consider any challenge to the bonds, their security, or the method of payment. Because the re-dedication of the defendants' tax revenues constitutes a pledge made as security for the bonds, the plaintiffs had to assert their claims within thirty days after publication of the Bond Resolution, or lose their cause of action. Since the decision in Denham Springs II was made after this court had observed that election challenges could still be maintained, the defendants state that the district court correctly applied that later jurisprudence in dismissing the plaintiffs' remaining claims in these suits.
However, the plaintiffs assert that their election challenges fall under Article VI, § 35(A), which states:
Contesting Election; Time Limit. For sixty days after promulgation of the result of an election held to incur or assume debt, issue bonds, or levy a tax, any person in interest may contest the legality of the election, the bond issue provided for, or the tax authorized, for any cause. After that time no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever. If the validity of any election, tax, debt assumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters. (Emphasis added).
The plaintiffs contend that this court's reference to Section 35(A) when it reviewed the Bond Validation Suit was correct and is now a final judgment, since the supreme court pretermitted consideration of this issue. Therefore, they claim this court's judgment applying the sixty-day limit of Section 35(A) to the plaintiffs' election challenges cannot be attacked by the defendants in this appeal.
However, any final judgment of this court can be overruled or reversed by the supreme court. The fact that the supreme court pretermitted consideration of an issue in this case does not necessarily mean that it agrees with the decisions of the lower courts on that issue. For instance, in World Trade Center Taxing Dist. v. All Taxpayers, 05-0374 (La.6/29/05), 908 So.2d 623, 638, the supreme court pretermitted discussion of one issue and stated that although the court was "not fully in accord with the rationale of the court of appeal," it would affirm the judgment, because the court of appeal had reached the correct result. As the supreme court stated in Denham Springs II, 945 So.2d at 673 n. 12, it simply will not consider arguments in *1005 briefs or oral arguments that are not included in the writ application, even if such arguments might have merit. See also Hanks v. Entergy Corp., 06-0477 (La.12/18/06), 944 So.2d 564, 569 n. 5; Boudreaux v. State, Through Dept. of Transp. and Development, 01-1329 (La.2/26/02), 815 So.2d 7, 11 n. 9. Therefore, the supreme court's pretermitting discussion of this issue cannot be interpreted as approval of this court's comments regarding it.
Plaintiffs also argue that because this court made a similar statement when these issues were considered in this court's earlier writ action in these cases, that ruling is "the law of the case" and could not be changed at this point in the litigation by the district court or this court. They claim the district court erred in ignoring this "law of the case" when it concluded the plaintiffs' claims must be dismissed. It is true that generally, when an appellate court considers arguments made in supervisory writ applications, the court's disposition on the issue considered becomes the "law of the case," foreclosing re-litigation of that issue either at the district court on remand or in the appellate court on a later appeal. However, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Cotton v. Gaylord Container, 96-1958, 96-2029, and 96-2049 (La.App. 1st Cir.3/27/97), 691 So.2d 760, 763, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147. In the consolidated cases we are considering, this court denied the writ, thereby declining to exercise its supervisory jurisdiction. See Jones, 05-1200, supra. Therefore, reconsideration of those issues is appropriate at this time.
Moreover, this court must always give deference to decisions from the supreme court, even if a particular decision runs counter to the inclination of the appellate court in the same or a similar case. This is especially true when, as in this case, the supreme court's decision involves the same issues and parties as the matter being considered by the appellate court. For these reasons, we, like the district court in this case, must take into consideration the supreme court's decision in the Bond Validation Suit, Denham Springs II, and, if relevant to the issues we are considering, apply that court's interpretations to these consolidated cases.
With that in mind, we note that the plaintiffs' claims in these cases consist of a challenge to the voters' rights to re-dedicate a certain portion of the taxing entities' tax revenues to a purpose other than that provided by the legislature. The plaintiffs are not claiming there were any procedural irregularities in the elections, such as insufficient notice, denial of some voters' rights to vote, improper counting of the ballots, etc. Of course, any election challenge based on such activities could not be made until after the elections. For that reason, the application of Article VI, § 35(A) of the constitution, which allows such claims to be brought within sixty days following the promulgation of the election results, is correct. However, the challenges brought in the suits we are considering are to the substantive provisions approved by the voters. These plaintiffs' claims involve the method of payment and the pledge of certain tax revenues as security for payment of the bonds that will be used to finance the Bass Pro project.
In Denham Springs II, the supreme court observed that tax increment financing is authorized by the state's Cooperative *1006 Economic Development Law, LSA-R.S. 33:9020, et seq., as a tool used to finance public investments and infrastructure improvements needed for economic development in specific geographical areas, usually blighted or economically depressed areas, without causing any additional tax burden on local taxpayers. Denham Springs II, 945 So.2d at 668 n. 1. One of the issues to be decided by the court was whether the thirty-day peremptive period set forth in Article VI, § 35(B) and LSA-R.S. 33:9038.34(L) "precludes any challenges to the provisions of a bond resolution, including the provisions made for the security and payment of the bonds. . . ." Denham Springs II, 945 So.2d at 668. On that issue, the court observed:
[The taxpayers] acknowledged they were not challenging the [Development] District's right to pledge its own money to the Project or to issue bonds secured by the District's money. Rather, their challenge was to the ability of other taxing entities to agree to cooperate in the Project and pledge their tax monies to secure the bonds.
Denham Springs II, 945 So.2d at 672. The court recited all the procedural steps required by the applicable statutes for issuing such bonds and pledging or dedicating sales tax increments for the facilitation of economic development, all of which had been observed by the taxing entities. With respect to legal proceedings to validate such bonds, the court cited LSA-R.S. 13:5121, et seq., including the provisions of LSA-R.S. 13:5129, which states:
In the event the decree of the court validates the bonds or validates the action taken to provide a new or different source of payment for the bonds, and no appeal is taken within the time above prescribed, or if appeal is taken and the decree of the court is affirmed, such decree shall be forever binding and conclusive as to the validity of the bonds, the validity of the tax, any lease or other means provided for the payment of such bonds and the validity of all pledges of revenues and of all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of such bonds, and as to all matters adjudicated and as to all objections presented or which might have been presented in such proceeding, and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings. (Emphasis added).
Denham Springs II, 945 So.2d at 677. The time limits referenced in this statute refer to the filing and response times for a bond validation suit, all of which had been correctly followed by the taxing entities in connection with the Bond Validation Suit being reviewed by the supreme court. Once those procedures had been properly followed, and the decree of the supreme court in Denham Springs II affirmed the lower courts' decisions validating the bonds, we consider that its decree is conclusive as to the validity of the bonds, the tax, the pledges of revenues, or any other provisions of the bonds.
Moreover, the supreme court cited the thirty-day peremption period in Article VI, § 35(B) and LSA-R.S. 33:9038.34(L), noting that:
[T]he constitutional and statutory provisions clearly and unambiguously create a thirty-day peremptive period for contesting the legality of a bond resolution and any provisions made therein for the security and payment of the bonds. This peremptive period commences with the publication of the bond resolution in the official journal of the political subdivision. *1007 It is during this period that any person of interest may present to the court any questions or concerns the person may have regarding the bonds, the security for the bonds, and any provision of the bond resolution. After the expiration of the thirty-day period, the right to contest is extinguished or perempted, and it is conclusively presumed all legal requirements for the issuance of the bonds have been satisfied and that the bonds, the legal documents providing for the bonds, and all security for the bonds are legal. Moreover, no court has authority to consider any challenge after the thirty-day peremptive period.
Denham Springs II, 945 So.2d at 686. Applying these precepts to the provisions of the bonds at issue in the Bond Validation Suit, which are the same bonds challenged in these consolidated Election Challenge Suits, the court said:
According to the constitutional and statutory language addressed above, any person of interest had thirty days from the publication to contest the legality of the resolution and any provisions made for the security and payment of the bonds. It was during this period that the [taxpayers] as interested persons could and should have presented to the court any questions or concerns they may have had regarding the provisions of the Bond Resolution for the security and payment of the bonds. . . . After the thirty-day [peremptive] period, the right to contest the Bond Resolution and the security provisions was extinguished, and a conclusive legal presumption of the validity of the bonds and the security provisions was established. After that time, the courts have no authority to consider any challenges to these matters.
Denham Springs II, 945 So.2d at 686-87. The court stated, "[b]ecause the [taxpayers] failed to timely exercise the right to contest the Bond Resolution and its security provisions, their challenge is now perempted." Denham Springs II, 945 So.2d at 688.
The supreme court's holding in Denham Springs II could hardly have been stated more clearly. Because the types of claims brought by the plaintiffs/appellants in this case are precisely the types of challenges perempted by the applicable constitutional and statutory provisions, we must conclude that this court has no authority to consider the challenges. As such, the defendants' motion to dismiss this appeal must be granted.

CONCLUSION
Based on the foregoing, we grant the motion to dismiss this appeal. Each party to this appeal is to bear its own costs.
MOTION GRANTED; APPEAL DISMISSED.
NOTES
[1] The district court approved an oral motion to consolidate the three cases during a telephone status conference on May 27, 2005, and a judgment approving the consolidation was signed June 1, 2005.
[2] Such tax increment financing (TIF) is authorized by Louisiana's Cooperative Economic Development Law, LSA-R.S. 33:9020, et seq.
[3] In an earlier bond validation suit, the Louisiana Supreme Court had concluded that the clear wording of the tax increment financing statutes required that once citizens had voted for a tax dedicated to one purpose, the tax could not be used for a purpose other than that which had been approved by the citizens; any alteration of a prior dedication had to be by vote of the people. Therefore, the propositions for financing the Bass Pro Shop had to be put to a vote. Denham Springs Economic Dev. Dist. v. All Taxpayers, 04-1674 (La.2/4/05), 894 So.2d 325, 335 (Denham Springs I).
[4] The Law Enforcement District's ordinance was approved April 29, 2005, and authorized the temporary re-dedication of seventy-two percent of the proceeds of a one-half of one percent sales and use tax previously approved by the voters on March 10, 1992. The Drainage District's ordinance authorized the temporary re-dedication of seventy-two percent of the proceeds of a one-half of one percent sales and use tax previously approved by the voters on January 19, 1985, and renewed on January 15, 2005. The School Board approved two ordinances: one authorized the temporary re-dedication of the proceeds of a one-half of one percent sales and use tax levied and collected by Special Sales Tax District No. 1, previously approved by the voters on July 18, 1987; the other, a parish-wide proposition, authorized the temporary re-dedication of the proceeds of a one percent sales and use tax levied and collected by the School Board, which was previously approved by the voters on May 13, 1978.
[5] This argument was not made concerning the School Board's ordinances because the enabling legislation for special taxing districts, LSA-R.S. 33:2721.6, does not specify or limit how the taxes are to be used, but merely requires that the proceeds "be dedicated solely for the purposes approved by the electorate." Similarly, LSA-R.S. 33:2737.44 authorizes the School Board to levy and collect a sales tax "after the question of the imposition of the tax shall have been submitted to the qualified electors of the parish . . ." and requires only that the ordinance imposing the tax "shall specify the purpose or purposes for which the tax is imposed" and that "the revenues derived therefrom shall be dedicated and used solely for said purposes." For each tax, the voters had initially approved the use of sales and use tax revenues for education-related purposes only. That purpose was changed in the challenged election.
[6] In Denham Springs I, 894 So.2d at 335, the supreme court pretermitted the constitutional issues.
[7] LSA-R.S. 18:1405(G) states that an action objecting to the calling of a special election shall be instituted not later than 4:30 p.m. of the fourteenth day after the calling of the election.
[8] This judgment also ordered the consolidation of the cases.
[9] According to LSA-R.S. 33:9038.34(L) and LSA-Const. art. VI, § 35(B), any challenge to a bond resolution must be brought within thirty days of its publication, after which time, no one would have a cause of action to test the regularity, formality, legality, or effectiveness of the resolution.
[10] For the sake of clarity, when referring to these parties in the Bond Validation Suit, we will call them the taxpayers.
[11] This statute, enacted as LSA-R.S. 33:9038.4 by 2002 La. Acts, 1st Ex. Sess., No. 147, § 1, was redesignated as LSA-R.S. 33:9038.34, pursuant to 2006 La. Acts, No. 850, § 4 and the statutory revision authority of the Louisiana State Law Institute.
[12] During the pendency of the Bond Validation Suit, the Development District intervened in the Election Challenge Suits as an additional defendant, and Ms. Bonneval intervened as an additional plaintiff in the two suits filed by Mr. Jones.