**HEALTH EDUCATION AUTHORITY OF LOUISIANA**

v.

**APCOA LASALLE PARKING CO., LLC.**

Civil Action No. 13–4569.

United States District Court, E.D. Louisiana.

Nov. 27, 2013.

Christopher S. Mann, Tarak Anada, Jones Walker, New Orleans, LA, for Health Education Authority of Louisiana.

Harry Rosenberg, Christopher K. Ralston, Jeremy T. Grabill, Phelps Dunbar, LLP, New Orleans, LA, for APCOA LaSalle Parking Co., LLC.

## ORDER AND REASONS

HELEN G. BERRIGAN, District Judge.

Before the Court is APCOA LaSalle Parking Company, LLC's ("ALPC's") motion to dismiss for lack of subject matter jurisdiction. Rec. Doc. 8. Plaintiff, Health Education Authority of Louisiana ("HEAL") opposes. Rec. Doc. 13. The Court, having reviewed the applicable law, the record, and the memoranda of counsel, GRANTS the motion to dismiss for the following reasons.

## I. Factual Background and Procedural History

This matter arises out of ALPC's leasing and operation of a HEAL-owned parking facility located at 300 LaSalle Street, New Orleans, Louisiana. Rec. Doc. 1 ¶ 3.

HEAL's complaint seeks declaratory judgment and damages for ALPC's alleged breaches of the lease agreement between the parties. *Id.* ¶¶ 49–61. According to its complaint, HEAL is an agency of the state of Louisiana charged with promoting medical and health education activities of private and public institutions in Louisiana under La.Rev.Stat. 17:3051 *et seq.* *Id.* ¶¶ 1–2. ALPC is a limited liability company organized under the laws of Louisiana, whose sole member, Standard Parking Corporation, is a corporation incorporated under the laws of Delaware with its principal place of business in Illinois. *Id.* ¶ 4.

HEAL's complaint invokes subject matter jurisdiction under 28 U.S.C. § 1332(a), alleging that the amount in controversy exceeds $75,000, exclusive of interest and costs and that there is complete diversity between itself and the only defendant, ALPC. *Id.* ¶ 7. ALPC now moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(1), arguing that HEAL is the alter ego of the state of Louisiana, and therefore not a "citizen" for purposes of § 1332(a). Rec. Doc. 8–1 at 1.

## II. Standard of Review

"A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998). Where, as here, the defendant attacks the factual basis for subject matter jurisdiction, the district court has the power to go beyond the allegations of the complaint to consider undisputed facts in the record and resolve disputes of fact created by the record. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ac-

cordingly the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (citations omitted).

### III. Analysis

 Because "a state is not a 'citizen' for purposes of diversity jurisdiction," a state agency that is merely an "alter ego" of the state cannot be a "citizen" for those purposes either. *Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir.1983). Only where the agency has separate identity and legal personality can citizenship be established. *Id.* Agency independence is fundamentally a question of state law. *Id.* Factors for analysis include: whether the agency wields generally recognized corporate powers, such as the right to sue and be sued, hold property, and enter into contracts in its own name; how the entity has been classified under and for purposes of state law, giving particular weight to state court decisions; the agency's degree of financial independence from the state, including whether debt incurred on behalf of the agency becomes a general obligation of the state; the extent of the agency's independent management authority; and whether the entity is concerned primarily with local, as opposed to statewide problems. *See id.; accord PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416 (5th Cir.1996). This analysis is "virtually identical" to the test used to determine whether an agency is an "arm of the state" for sovereign immunity purposes. *Id.* at 1416 n. 2.

 In any given case, these factors are likely to point in conflicting directions. *Tradigrain*, 701 F.2d at 1133. A reviewing court must balance these factors against one another without losing sight of the central inquiry: whether the state is the real party in interest in a lawsuit nominally brought by or against the agency. *Id.* As explained below, consideration of these factors leads the Court to conclude that the state of Louisiana is the real party in interest where HEAL is a party.

### A. Corporate Powers

The enabling act allows HEAL to sue and be sued in its own name, to enter into contracts "necessary or convenient" to its operations, and to acquire, alienate, and encumber real and personal property. *Id.* § 17:3055(2), (4), & (7). These are some "generally recognized powers of an independent agency" that generally weigh in favor of recognizing separate identity. *Tradigrain*, 701 F.2d at 1133. However, the ability of an agency to sue and be sued loses some of its traction in Louisiana because it is a power accorded all departments in the executive branch. *State of La. ex rel. Guste v. Home Depot, Inc.*, 589 F.Supp. 1254, 1256 (E.D.La.1984). The Court also notes that insofar as state law characterizes HEAL as a "state agency" (the Court concludes below that it does), this characterization limits HEAL's ability to be sued. *See* La.Rev.Stat. § 13:5106 ("No suit against the state or a state agency ... shall be instituted in any court other than a Louisiana state court."); *cf. Fireman's Fund Ins. Co. v. Dep't of Transp. & Dev., State of La.*, 792 F.2d 1373, 1375 (5th Cir.1986) (applicability of § 13:5106 weighs in favor of classifying Louisiana's executive departments as arms of the state). Thus, HEAL's corporate powers weigh only slightly in favor of recognizing its independence.

### B. State Law Characterization

Under the *Tradigrain* framework, treatment of an agency by the state court is a factor which "subsumes all others" in the analysis. *Id.* at 1132. However, in this

case, as in *Tradigrain,* there is no decisional law classifying HEAL. *Id.* at 1133. *Landis Construction Company v. Health Education Authority of Louisiana* is the only case in which HEAL is named a party, and its status as an alter ego or separate entity is not implicated by the published opinion in that case. *Cf. Landis Construction Co. v. Health Ed. Authority,* 367 So.2d 330, 332 (La.1979) ("Because of the narrow grounds on which we decide this case, it is unnecessary to address the broader question of whether the private law of mandate necessarily applies to the acts of a public or private corporation which must operate through a representative."), *rev'g* 359 So.2d 1045 (La.App. 4 Cir.1978). The Court is therefore left to examine HEAL's relationship to the state through the lens of the other branches of government. *See Tradigrain,* 701 F.2d at 1133.

HEAL was established by state law. *See* La.Rev.Stat. § 17:3053 (HEAL is a "body corporate and public constituting an instrumentality of the state of Louisiana and exercising public and essential governmental functions."). However, more is required to "conclude that under state law, [a body] is an arm of the state of Louisiana." *Richardson v. Southern Univ.,* 118 F.3d 450, 454 (5th Cir.1997) (citing *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 147 & n. 5 (5th Cir.1991)).

Statute describes HEAL as an "agency" of the Executive Branch of Louisiana government, in particular, the Department of Health and Hospitals (DHH). La.Rev.Stat. §§ 36:3, 36:259(B), 36:804. The parties dispute the significance of this designation. ALPC argues that HEAL's placement within DHH following the 1974 reorganization of the Executive Branch is dispositive of the legislature's intent for HEAL to be treated as the state's alter ego, such that further analy-

sis is unnecessary. Rec. Doc. 8–1 at 7–10. HEAL argues that the precedents cited, which concern whether an executive department can be considered an arm of the state for sovereign immunity purposes, are irrelevant in light of HEAL's independence from its executive department, DHH. Rec. Doc. 13 at 10.

ALPC's argument is based on cases recognizing that, in a proceeding against an executive department, "the State of Louisiana is the real party at interest and is indistinguishable from its executive departments." *Wright v. Moore,* 380 So.2d 172, 173 (La.App. 1 Cir.1979), *writ denied,* 382 So.2d 164 (La.1980); *see also Darlak v. Bobear,* 814 F.2d 1055, 1059 (5th Cir. 1987) (citing *Wright v. Moore, supra* for the same proposition). They also note that the statute places Louisiana's executive departments on equal footing with one another in many respects, causing the Fifth Circuit to opine, arguably in dicta, that it would be unrealistic to require careful sovereign immunity analysis whenever a Louisiana executive department is sued. *Fireman's Fund Ins. Co.,* 792 F.2d at 1375.

The Court need not evaluate the merit of HEAL's response to this argument because, even taken at face value, the cases cited do not authorize this Court to forgo further analysis in light of the statute's general language characterizing HEAL as an agency. *Cf. id.* at 1375–76 (analyzing additional factors after determining that the Department of Transportation and Development was an executive department). On the contrary, case law cautions against placing great weight on "general language in [an] enabling act," describing an entity as a part of state government. *PYCA Industries,* 81 F.3d at 1417. In the end, HEAL's designation as an agency within the executive branch is less meaningful than the practical implications of that des-

ignation. *Cf. Richardson*, 118 F.3d at 454 (analyzing legal restrictions on Southern's autonomy to determine whether state law considered it an arm of the state); *Tradigrain*, 701 F.2d at 1133 (imposition of public bidding restrictions weighs in favor of finding that the state is the real party in interest).

As HEAL argues, its ability to lease land to and from the state calls into question whether it is a mere instrumentality of the state in the eyes of the legislature. La.Rev.Stat. § 17:3055.1. States do not typically place agencies in the position to sue the state itself. *See C.H. Leavell & Co. v. Bd. of Comm'rs of Port of New Orleans*, 424 F.2d 764, 766–67 (5th Cir. 1970) (holding that the New Orleans "Dock Board" was a separate entity from the state "because the State of Louisiana has sued the Dock Board in its own courts."). The legislature also distinguished between HEAL, on the one hand, and the state, on the other, for purposes of designating how HEAL's bond obligations must be satisfied. *See* La.Rev.Stat. § 17:3056(A)(1).

Nevertheless, the weight of evidence points to the fact that HEAL's leasing and bond powers were limited grants of authority that were not intended to place HEAL outside of state government. The legislature provided expressly that HEAL's bonds, though not payable from general treasury funds, were nevertheless tax-exempt like other government-issued bonds. La.Rev.Stat. §§ 17:3056(A)(1), 47:48. HEAL's executive director is designated an unclassified civil servant of the state. *Id.* § 17:3053(G). The State Board of Ethics designated HEAL an "Executive Branch Agency" for purposes of the Executive Branch Lobbyist Disclosure Act, La. Rev.Stat. § 49:71 *et seq. See* La. Admin. Code tit. 52, pt. I, § 2111(C)(VII)(17). The Attorney General has issued opinions that consider HEAL a part of Louisiana

government for purposes of several different state laws. *See* La. Atty. Gen. Op. No. 80–823, 1980 WL 116225 (1980) (HEAL's property sales subject to public advertising and bidding requirements under La.Rev. Stat. 41:131); La. Atty. Gen. Op. No. 79–781, 1979 WL 38415 (1979) (HEAL subject to public meeting restrictions under La. Rev.Stat. § 42:5); La. Atty. Gen. Op. No. 77–1464, 1977 WL 34235 (1977) (HEAL's payment of interest upon loans obtained at a bank are tax exempt under La.Rev.Stat. § 47:48). Although the Attorney General concluded that leasing and construction of the 300 LaSalle Street parking facility currently at issue was not subject to public bidding requirements, this conclusion was not based on any non-governmental status enjoyed by HEAL. La. Atty. Gen. Op. No. 97–207, 1997 WL 529812 (1997). Rather, it was based on ALPC's status as a private actor, the ambiguous nature of the funds used for construction, and the fact that HEAL's authorizing legislation superseded certain public bidding requirement. *Id.*

Regulations and advisory opinions generally hold less weight than case law. However, these sources are uncontradicted. Because persuasive authority at the state level holds that HEAL is an alter ego of the state for other legal purposes, this factor weighs against a finding of HEAL's independence.

### C. Source of Funding/Debt Responsibility

HEAL's Executive Director has executed a declaration stating that his agency does not receive any funding from any government, even the state of Louisiana. Rec. Doc. 13–1 ¶ 3. There is nothing in the record to contradict this statement. The statute also supports the idea that HEAL is largely financially independent from state government. HEAL has the power to issue bonds that are only payable from

its own receipts and revenue. La.Rev. Stat. §§ 17:3055(8), 17:3056(A). Thus, unlike the Port Authority in *Tradigrain,* HEAL's bond issues do not become the general obligations of the treasury. 701 F.2d at 1133; *see also PYCA Industries,* 81 F.3d at 1417 (distinguishing *Tradigrain* on the same basis). HEAL is also authorized to incur other kinds of obligations paid out of its receipts and revenue. *Id.* § 17:3055(4, 8). The independent nature of HEAL's funding streams relieve it of the constitutional requirement to deposit its revenue and receipts into the state treasury. La. Const. art. VII § 9. Most importantly, HEAL reimburses DHH for all of its operational, overhead, and payroll expenditures. Rec. Doc. 13–1 ¶ 7; *id.* at 43–44. These circumstances weigh in favor of HEAL's independence.[1]

### D. Local Autonomy/Extent of Independent Management Authority

"When examining the extent of the agency's independent management authority, the court should look to whether the agency has the power to make its own hiring decisions, the power to enter into its own contracts, and the power to engage its own counsel." *Tradigrain,* 701 F.2d at 1132. Even basic accountability measures, such as the duty to make financial reports to the state legislature and the duty to comply with audits, tend to undermine the local autonomy of an agency and, as such, its independence from the state for diversity purposes. *Id.* at 1133.

The degree of state involvement in HEAL's activities strongly suggests that it is not an entity independent from the state. Policy-making authority for HEAL

is vested in a Board of Trustees. La.Rev. Stat. § 17:3053(B). With the exception of one member who is appointed by the Mayor of New Orleans, all members are appointed by, and serve at the pleasure of, the Governor. *Id.* The Governor himself is also a member *ex-officio* of the Board. *Id.* The Board, in turn, hires HEAL's Executive Director. *Id.* § 17:3053(G). Similar relationships have argued in favor an agency's entitlement to sovereign immunity as an arm of the state. *See, e.g., Delahoussaye,* 937 F.2d at 148. While statute gives HEAL wide-ranging corporate powers, *see* La.Rev.Stat. § 17:3055(2, 4), the exercise of these powers appears subject to the Board's consent. *See Landis Construction Co.,* 367 So.2d 330 (arbitration clause deemed valid because the Board expressly authorized entry into the contract); *see also* Rec. Doc. 13–1 ¶ 4.B, F (referring to HEAL Board resolutions authorizing hiring of Executive Director and sale of property). Thus, the Board's influence extends to the realm of day-to-day business, and is not limited to the policy-making realm.

HEAL is subject to further oversight by the Secretary of DHH, who must approve directly the issuance of any bond on behalf of HEAL. La.Rev.Stat. § 17:3056(H). The Court also notes that, while HEAL is accorded substantial latitude in realizing its purposes and carrying out its functions, those purposes and functions have been largely predetermined by the legislature, and are appropriately characterized as "public" and "essentially governmental." La.Rev.Stat. § 17:3053(A); *cf. Tradigrain,* 701 F.2d at 1133 (Port Authority not con-

---

1. The parties have not addressed whether, by virtue of HEAL's "agency" designation, the state is obligated to pay for any civil judgments against it. *See* La. Const. art. XII § 10(C); La.Rev.Stat. § 13:5109(B)(2). The Court assumes for the sake of this motion that

the state is required to do so but that it may invoice HEAL for the amount, just as it does with other operational expenses. This arrangement would be consistent with the HEAL's ability to contract with, and therefore litigate against, the state. *Id.* § 17:3055.1.

sidered independent in part because it performed "essentially governmental functions"). Like the Port Authority in *Tradigrain*, HEAL has been constrained by the legislature to exercise its powers, duties, and functions "for the general welfare and health of the citizens of Louisiana." *Id.* These circumstances weigh strongly against a finding of independence.

### E. Degree of Local Concern

HEAL is an organization of statewide reach. HEAL's enabling statute provides that it was created "to promote the medical and/or health educational activities of various public and private institutions and organizations in the state of Louisiana." La.Rev.Stat. § 17:3051. Nevertheless, by limiting the majority of HEAL's authority to act to the New Orleans area, the legislation makes clear that HEAL is an entity primarily concerned with local problems.

Two-thirds of HEAL's statutory mandate is to operate a cooperative, multi-institutional medical complex and to construct facilities in the complex and the encompassing "primary service area" for the use of primary and participating institutions. *Id.* § 17:3051(1, 3). Statute defines "complex" as the Louisiana Medical Complex at New Orleans and "primary service area" as the area within a ten-mile radius of the former Charity Hospital. *Id.* § 17:3502(4), (7), & (8). HEAL's work with institutions outside of New Orleans is limited under statute to "aid[ing] in the development of health care and education programs," *id.* § 17:3051(2); 3502(6), (7), and incurring debt for the benefit of LSU–Shreveport's Health Science Center, *id.* § 17:3506(A)(2). The Court also notes that HEAL is domiciled by statute in New Orleans, *id.* § 17:3503(A), and acknowledges the Executive Director's declaration, with respect to its statement that HEAL's

concerns are primarily local. Rec. Doc. 13–1 ¶ 8.

In light of the foregoing, HEAL's focus is primarily, though not exclusively, local. This factor weighs in favor of independence, albeit slightly.

### IV. Conclusion

The balance of the factors discussed above suggest that HEAL is the alter ego of the state of Louisiana for purposes of 28 U.S.C. § 1332(a). HEAL performs a limited, public function on behalf of the state, with substantial oversight from the Governor and the Secretary of DHH. Authorities within the state have considered HEAL part of state government for various purposes. HEAL's large degree of financial independence from the state, its unique bond issuing authority, and its ability to lease land to and from the state were intended to facilitate its activities on behalf of the public. These grants of authority appear limited and not part of a comprehensive independent corporate identity. Further, although HEAL's ability to lease to· and from the state creates a potential for conflicting interests between the two, the potential for a genuine conflict is mitigated by HEAL's duty to act in the public interest. In other words, where HEAL and the state are at odds with respect to a lease, the real conflict is between competing state interests. Thus, HEAL does not have a separate identity or citizenship under 28 U.S.C. § 1332(a).

Accordingly,

IT IS ORDERED that the defendant, APCOA LaSalle Parking Company, LLC's motion to dismiss for lack of subject matter jurisdiction is GRANTED. Rec. Doc. 8.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant APCOA LaSalle Parking Company,

LLC and against the plaintiff, Health Education Authority of Louisiana, dismissing the above-captioned matter.