Harry Rosenberg, Christopher K. Ralston, Lindsay Calhoun, PHELPS DUNBAR LLP, Canal Place/365 Canal Street, Suite 2000, New Orleans, LA 70130-6534, COUNSEL FOR DEFENDANT/APPELLANT COUNSEL FOR DEFENDANT/RELATOR
Henry W. Kinney, Michael L. DeShazo, Aaron M. Maples, KINNEY, ELLINGHAUSEN, RICHARD & DESHAZO, 1250 Poydras Street, Suite 2450, New Orleans, LA 70113-1806, COUNSEL FOR PLAINTIFF/RESPONDENT
Richard Leibowitz, BREAZEALE, SACHSE & WILSON, LLP, 23rd Floor, One American Place, Post Office Box 3197, Baton Rouge, LA 70821-3197, ATTORNEYS FOR AMICUS CURIAE, POLICE JURY ASSOCIATION OF LOUISIANA
Bradley C. Meyers, Shannan Sweeney Rieger, KEAN MILLER LLP, Post Office Box 3513, Baton Rouge, LA 70821-3513, ATTORNEYS FOR AMICUS CURIAE, LOUISIANA MUNICIPAL ASSOCIATION
(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Rosemary Ledet )
Judge Rosemary Ledet *537 The Relator, APCOA LaSalle Parking Company, LLC ("ALPC"), seeks review of the trial court's November 29, 2017, judgment, denying its peremptory exception of peremption. For the reasons that follow, we grant ALPC's writ application, reverse the trial court's judgment, and remand.
FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of ALPC's leasing and operating a parking garage owned by the Respondent, the Health Education Authority of Louisiana ("HEAL").[1] The parking garage is located at 300 LaSalle Street in New Orleans, Louisiana. It was originally built in the early 1970s and expanded in the late 1990s (the "Garage").
In December 1998, ALPC and HEAL entered into a lease-operating agreement to expand the Garage and to operate the expanded Garage (the "1998 Lease").[2] HEAL financed the expansion by adopting a resolution authorizing the issuance of taxable parking revenue bonds for which the 1998 Lease served as security. In September 1998, the bond resolution was published *538 in the Times-Picayune . Section 7 of the bond resolution stated as follow:
This resolution shall be published one time in the Times-Picayune , a daily newspaper published in and of general circulation in the City of New Orleans, Louisiana, and that, as provided by the Act, for a period of thirty (30) days from the date of such publication, any person or persons in interest may contest the legality of this resolution and legality of the Bonds for any cause, after which time no one shall have any cause or right of action to contest the legality of this resolution or of the Bonds authorized hereby for any cause whatsoever. If no suit, action or proceedings are begun contesting the validity of the Bonds within the thirty days herein prescribed, the authority to issue the Bonds and to provide for the payment thereof, the legality thereof and of all of the provisions of this resolution authorizing the issuance of the Bonds shall be conclusively presumed, and no court shall have authority to inquire into such matters....[3]
As no one timely contested the legality of the resolution or the bonds, the bonds were issued. Thereafter, the addition to the Garage was constructed; and ALPC managed the expanded Garage.
In 2013, HEAL filed suit against ALPC in federal district court, seeking a declaratory judgment and damages for ALPC's alleged breaches of the 1998 Lease. Health Educ. Auth. of Louisiana v. APCOA LaSalle Parking Co., LLC , 991 F.Supp.2d 762 (E.D. La. 2013) (" HEAL I "). The federal court dismissed the suit on ALPC's motion for lack of subject matter jurisdiction. Id.
In 2015, HEAL filed a similar suit in Civil District Court for the Parish of Orleans. In 2016, HEAL amended the suit to seek a declaratory judgment that the 1998 Lease was null and void (the "First Amended Petition").[4] The trial court granted a motion for partial summary judgment in HEAL's favor after finding the 1998 Lease to be an absolute nullity for failure to comply with the Public Lease Law.[5] The trial court certified that judgment as final for purposes of appeal, and ALPC appealed.
During the pendency of the appeal, ALPC filed a peremptory exception of peremption in this court. ALPC argued (as it argues in the instant writ application) that HEAL's claims in the First Amended Petition were perempted pursuant to La. Const. art. VI, § 35 (B)[6] and *539 La. R.S. 17:3056(G).[7] This court reversed the trial court's grant of partial summary judgment in HEAL's favor and remanded for a trial on the exception of peremption. Health Education Authority of Louisiana v. APCOA LaSalle Parking Co., LLC , 17-0259 (La. App. 4 Cir. 9/13/17), --- So.3d ----, 2017 WL 4052073.
Following a hearing, the trial court denied APLC's exception of peremption. The instant writ application followed.[8]
DISCUSSION
The issue presented by this writ application is whether the thirty-day period set forth in La. Const. art. VI, § 35 (B) applies to bar the claims raised by HEAL regarding the validity of the 1998 Lease.[9] Given that the parties do not dispute any of the facts pertaining to the issue of peremption, the issue of whether La. Const. art. VI, § 35 (B) applies presents a question of law, which this court reviews de novo . See Jones v. Sewerage & Water Bd. of New Orleans , 16-0691, pp. 2-3 (La. App. 4 Cir. 3/8/17), 213 So.3d 497, 499 (holding that "[w]here there is no dispute regarding material facts, only the determination of a legal issue, the reviewing court must apply the de novo standard of review").
In denying APLC's exception of peremption, the trial court, agreeing with HEAL, found the thirty-day peremptive period in La. Const. art. VI, § 35 (B) inapplicable for the following three reasons: (i) HEAL is not a "political subdivision" as *540 defined in La. Const. art. VI, § 44 (2)[10] ; (ii) HEAL is not challenging the bond; and (iii) an absolute nullity does not prescribe under La. C.C. art. 2032.[11] We separately address each of these findings.
Political subdivision
By its express terms, La. Const. art. VI, § 35 (B) applies to bonds issued by a political subdivision. Finding that HEAL was not a political subdivision as defined by La. Const. art. VI, § 44 (2), the trial court relied upon the federal district court's determination in HEAL I that HEAL was an "alter ego of the state." 991 F.Supp.2d at 768. ALPC contends that the federal court's determination in HEAL I is not dispositive given it was for the purposes of establishing the lack of subject matter jurisdiction, not for the instant purpose of determining the applicability of La. Const. art. VI, § 35 (B). We agree.
Nor is the Legislature's characterization of HEAL in its enabling legislation, La. R.S. 17:3053 -an "instrumentality of the state of Louisiana"-dispositive. See Slowinski v. England Econ. & Indus. Dev. Dist. , 02-0189, p. 5, n. 3 (La. 10/15/02), 828 So.2d 520, 524 (noting that the Legislature's characterization of the public body as "a 'political subdivision of the state' is not determinative of whether it is an 'instrumentality of the state.' ").
Addressing the meaning of the term "political subdivision of the state" in the Louisiana Constitution, one commentator has observed as follows:
The reference to a political subdivision of the state is essentially a straightforward reference to local governments. As defined in Article VI (Local Government), the narrower term "[l]ocal governmental subdivision" means a parish or a municipality, but "political subdivision" is a broader term including a parish or municipality, but also "any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." Virtually all special districts established by cities and municipalities are thus covered. The definition can also encompass, surprisingly, some special districts with statewide application. The supreme court allowed the legislature to establish under Article VI, Section 19 the statewide Recovery District with the power to impose a statewide sales tax and use the proceeds to pay off bonds that were sold to finance a state deficit. In Board of Directors of the Louisiana Recovery District v. All Taxpayers , [ 529 So.2d 384 (La. 1988) ] the court stated that such a district "is a valid political subdivision and that it may be granted the power to tax." [ Id. at 388.] A power generating authority providing services in many parts of the state was found to be a political subdivision and its property was not subject to ad valorem taxation. [ Slay v. La. Energy & Power Authority , 473 So.2d 51 (La. 1985).]
Lee Hargrave, Limits on Borrowing and Donations in the Louisiana Constitution of 1975 , 62 LA. L. REV. 137, 177 (2001).
Applying these principles here, we find HEAL is a unit of local government authorized "to perform governmental functions" and thus a political subdivision under La. Const. art. VI, § 44. Hence, *541 HEAL falls within the broad definition of a political subdivision under the Louisiana Constitution.
Challenge to the bond
The second issue is whether HEAL is challenging the bond. The answer to this question is simple. The scope of La. Const. art. VI, § 35 (B) is broader than a challenge to the bond; it covers challenges regarding "the bonds, the security for the bonds, and any provision of the bond resolution." Denham Springs Econ. Dev. Dist. v. All Taxpayers, Prop. Owners & Citizens of Denham Springs Econ. Dev. Dist. , 05-2274, p. 32 (La. 10/17/06), 945 So.2d 665, 686. HEAL, as APLC points out, is challenging an agreement-the 1998 Lease-that is identified as security for the bond in the bond resolution. HEAL's claims thus fall squarely within the scope of La. Const. art. VI, § 35 (B).
Absolute nullity
HEAL is seeking a declaratory judgment that the 1998 Lease is an absolute nullity. The trial court, agreeing with HEAL,[12] found that an absolute nullity cannot prescribe under La. C.C. art. 2032. We find this argument unpersuasive. The Louisiana Constitution sets forth a thirty-day peremptive period. After the thirty-day period has expired, "the right to contest is extinguished or perempted, and it is conclusively presumed all legal requirements for the issuance of the bonds have been satisfied and that the bonds, the legal documents providing for the bonds, and all security for the bonds are legal." Denham Springs , 05-2274 at p. 32, 945 So.2d at 686. Thus, "no court has authority to consider any challenge after the thirty-day peremptive period." Id.[13] Accordingly, we find the thirty-day peremptive period in La. Const. art. VI, § 35 (B) applies to all claims, including absolute nullity claims.
Accordingly, we find the trial court's judgment overruling the peremptory exception of peremption is legally erroneous and grant the exception. Nonetheless, because the record before us on APLC's writ application is unclear as to whether all of HEAL's claims in the First Amended Petition are challenges to the validity of the 1998 Lease and thus perempted, we remand *542 for consideration of all remaining claims.
DECREE
For the foregoing reasons, we grant the Relator's writ application. We reverse the trial court's November 29, 2017, judgment; grant the Relator's peremptory exception of peremption; and remand for consideration of all remaining claims.
WRIT GRANTED; JUDGMENT REVERSED; AND REMANDED

HEAL is a public body that was created by the Legislature in 1968. See La. R.S.17:3051 -17:3060.2 (recently amended by Acts 2016, No. 577, § 1, eff. Aug. 1, 2016). The four purposes for which HEAL was created are enumerated in its enabling legislation as follows:
• Assisting "public and private institutions and organizations that are dedicated to exemplary patient care, health science education and biomedical research, as well as organizations providing facilities ... or services deemed appropriate by the authority";
• Aiding "in the development of health care and education programs by the primary and participating institutions and to assist in the coordination of planning and in implementing the attainment of the objectives of such institutions";
• Acquiring or assisting in the acquisition of land and "the planning, acquisition, construction, reconstruction, rehabilitation, improvement and development of facilities in the ...primary service area for the use of the primary and participating institutions, and the development, acquisition, construction, reconstruction, rehabilitation, improvement and operation of jointly usable facilities for such institutions"; and
• Assisting in or providing for "the financing of any of the above and foregoing activities or facilities in the manner hereinafter authorized."
La. R.S. 17:3051 (before and after the 2016 amendment).

In March 1973, HEAL entered into a lease-operating Agreement with ITT Consumer Services Corporation ("ITT") to construct and to operate the parking garage (the "1973 Lease"). In 1976, ITT assigned all of its rights, title, and interest in the 1973 Lease to APCOA/Standard Parking, Inc. ("APCOA"). In December 1998, APCOA assigned all of its rights, title, and interest in the 1973 Lease to ALPC.

Virtually identical language is contained in La. Const. art. VI, § 35 (B) regarding the time limit for contesting any ordinance or resolution authorizing the issuance of bonds by a political subdivision of the state.

In the First Amended Petition, HEAL indicated that it "desire[d] to replace the original Petition for Declaratory Judgment and Damages in its entirety with this First Amended Petition."

Although the 1973 Lease was publically bid and awarded to ITT as the lowest bidder, the parties amended the 1973 Lease on December 31, 1997, and July 1, 1998, without public bid to allow the parties to finalize the Garage expansion plans and to extend the term of the lease, on both occasions. Likewise, the parties, in entering into the 1998 Lease that provided for an expiration date of December 31, 2030, failed to follow the advertisement and public bid requirements. The 1998 Lease also included a provision that transferred ownership of the Garage addition to ALPC for the duration of the 1998 Lease, which HEAL argued was a violation of La. Const. art. VII, § 14.

La. Const., art. VI, § 35 (B) provides as follows:
Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days.

La. R.S. 17:3056(G) provides as follows:
For a period of thirty days from the date of publication of the resolution authorizing the issuance of any bonds hereunder, which publication shall be made in a newspaper of general circulation in the city of New Orleans, Louisiana, or in the city of Baton Rouge, Louisiana, any person or persons in interest shall have the right to contest the legality of the resolution and the legality of the bond issue for any cause, after which time no one shall have any cause or right of action to contest the legality of said resolution or of the bonds authorized thereby for any cause whatsoever. If no suit, action or proceedings are begun contesting the validity of the bonds within the thirty days herein prescribed, the authority to issue the bonds and to provide for the payment thereof, the legality thereof and of all of the provisions of the resolution authorizing the issuance of the bonds shall be conclusively presumed, and no court shall have authority to inquire into such matters. Such bonds shall have all the qualities of negotiable instruments under the law merchant and the Negotiable Instruments Law of the State of Louisiana.

This court granted requests by the Louisiana Municipal Association and the Police Jury Association of Louisiana to file amicus curiae briefs in support of Relator's position. The gist of their contentions is that the trial court's ruling jeopardizes the marketability of municipal bonds.

APLC also contends that the thirty-day preemptive period in La. R.S. 17:3056(G) applies here. HEAL counters that La. R.S. 17:3056(G) does not apply because the peremptive period in the statute does not apply to challenges of security pledged for repayment of the bonds, as the statute does not use "security" in its language. Given our finding that La. Const. art. VI, § 35 (B) applies here, we pretermit addressing the issue of whether the statutory provision applies.

La. Const. art. VI, § 44 (2) defines the term "political subdivision" as "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions."

La. C.C. art. 2032 provides that an "[a]ction for annulment of an absolutely null contract does not prescribe."

Because the issue of whether the peremptive period of La. Const. art. VI, § 35 (B) applies to absolute nullities has not been addressed by this court, HEAL submits that the issue is analogous to Louisiana jurisprudence holding that if a tax sale is an absolute nullity due to lack of proper notice, the peremptive period of La. Const. art. VII, § 25 (C) cannot be relied upon to validate the tax sale. HEAL's reliance on tax sale jurisprudence is misplaced. In the tax sale cases, the lack of constitutional due process is the basis for the court's finding that the preemptive period cannot operate in contravention of federal due process requirements. See Lacoste Builders, L.C. v. Strain , 03-0511 (E.D. La. 10/29/03) (unpub. ), 2003 WL 22466233 at *5 (finding tax sale an absolute nullity "[b]ecuse there is no evidence of any attempt to notify Lacoste Builders through mail or personal service, Lacoste Builders did not receive the due process to which they were entitled under the Fourteenth Amendment and Mennonite "). Here, in contrast, there is no due process violation at issue. See Denham Springs , 05-2274 at pp. 28-29, 945 So.2d at 684 (noting that "[b]ecause no constitutionally protected property interest is involved in this case, the State is free to limit and restrict the right to assert any challenge without violating due process requirements" and that "[t]he notification procedure set forth in our constitution and statutory law was appropriately followed by the publication of the Bonds Resolution in the Livingston Parish").

See Babin v. Parish of West Feliciana , 15-0489 (La. App. 1 Cir. 2/17/16), 189 So.3d 446 ; Town of Sterlington v. Ouachita Parish Police Jury , 49,406 (La. App. 2 Cir. 10/1/14), 150 So.3d 944 ; Sabine River Authority v. All Taxpayers , 11-1139 (La. App. 3 Cir. 10/5/11), 74 So.3d 278 ; Jones v. Livingston Parish Law Enforcement Dist., 07-0628 (La. App. 1 Cir. 9/14/07), 970 So.2d 996